# IN THE SUPREME COURT OF THE STATE OF NEVADA

DANIELLE YVONNE SLAUGHTER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 74057

FILED

APR 25 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____S. Young_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a bench trial, of first-degree murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

Appellant argues that insufficient evidence was adduced to support her conviction, that she did not make a knowing, intelligent, and voluntary waiver of her right to a trial by a jury, and that as a matter of law her murder conviction cannot be supported by an act of child abuse because the act of child abuse was murder. We disagree with appellant's contentions and affirm her judgment of conviction.

*Sufficiency of the evidence*

Appellant argues the evidence adduced at trial was insufficient to support her conviction. This court reviews a challenge to the sufficiency of the evidence in the light most favorable to the prosecution to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008) (quoting *Koza v. State*, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "This court will not reweigh the evidence or evaluate the credibility of witnesses because that is the responsibility of the trier of fact." *Mitchell*, 124 Nev. at 816, 192 P.3d at 727. And "a verdict supported by substantial

19-18154

evidence will not be disturbed by a reviewing court." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

Appellant was convicted of first-degree murder with the use of a deadly weapon, based on a theory of child-abuse felony murder. The State presented evidence, including forensic testing, testimony, and appellant's own statements, that appellant stabbed her daughter multiple times in the chest and neck with scissors and that the victim died as a result of the stabbings. Viewed in the light most favorable to the prosecution, appellant's statements demonstrate a willfulness to stab the victim. Thus, the evidence presented at trial was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *See* NRS 193.165 (deadly weapon statute); NRS 200.010 (defining murder); NRS 200.020 (defining express and implied malice); NRS 200.030(1)(b) (outlining child abuse as a predicate felony for application of the felony-murder rule); NRS 200.030(6)(b) (defining child abuse in the context of felony murder).

Appellant contends that she could not have willfully committed child abuse based on the district court's finding that she did not willfully commit premeditated and deliberate murder. But her contention confuses the two very different uses of the word "willful." "Willful" as used within premeditated murder "requires that the killer actually intend to kill," *Byford v. State*, 116 Nev. 215, 234, 994 P.2d 700, 713 (2000), whereas "willful" within the child abuse statute requires "a purpose or willingness" to commit an act of child abuse, *see Childers v. State*, 100 Nev. 280, 283, 680 P.2d 598, 599 (1984). A rational trier of fact could determine that appellant did not intend to kill the victim but that she did act with purpose or willingness when stabbing the victim. Therefore, the district court's

determination as to premeditated murder does not exclude a finding of willful child abuse.

Appellant also argues that her mental status precluded a finding of willfulness or a finding that the injury was nonaccidental, and that evidence demonstrating involuntary intoxication was presented. However, appellant re-argues her theory of the case and asks this court to reweigh the evidence presented. The district court heard evidence of appellant's mental health, considered argument related to appellant's ingestion of diet pills, and was instructed as to the defenses of voluntary and involuntary intoxication. Even so, the district court found appellant guilty but mentally ill[1] of first-degree child-abuse felony murder with the use of a deadly weapon. And, as concluded above, there is substantial evidence to support this determination,

*Waiver of jury trial*

Appellant claims she did not make a knowing, intelligent, and voluntary waiver of her right to a trial by jury. She argues that the district court did not conduct an adequate canvass regarding her waiver or discuss any of the subjects outlined in *Gallimort v. State*, 116 Nev. 315, 320, 997 P.2d 796, 799 (2000). She further asserts that, because the district court was aware of her mental history and competency issues, it had a duty to conduct a more thorough canvass to ensure she understood the ramifications of her waiver. Based on the district court's failure to properly canvass her, appellant contends the record does not support the district

---

[1]Appellant also argues that a finding of guilty but mentally ill necessitates a finding that she did not act willfully in committing the child abuse; we disagree. Appellant was found to be mentally ill during the commission of the child abuse, but that finding does not negate her criminal liability.

court's determination that she made a knowing, intelligent, and voluntary waiver.

When tried for a serious offense, a criminal defendant has the constitutional and statutory right to a trial by jury. *See* U.S. Const. amend. VI; Nev. Const. art. 1, § 3; NRS 175.011. However, a defendant may waive this right "in writing with the approval of the court and the consent of the State." NRS 175.011(1). Additionally, this court has recommended that district courts inform the defendant of certain subjects before granting a waiver of this right. *Gallimort*, 116 Nev. at 320, 997 P.2d at 799 (outlining prospective, nonmandatory subjects such as: "(1) the number of members of the community composing a jury; (2) the defendant's ability to take part in jury selections; (3) the requirement that jury verdicts must be unanimous; and (4) that the court alone decides guilt or innocence if the defendant waives a jury trial"). This court reviews a defendant's waiver of the right to a jury trial de novo. *Id.* at 318, 997 P.2d at 798.

Here, defense counsel and appellant signed declarations before trial acknowledging that appellant had thoroughly discussed the waiver, as well as the benefits and consequences of the waiver, many times with counsel. Appellant declared she understood that: she had the right to have a jury determine her guilt; by waiving the right, a judge would decide her case; the decision was a serious one, requiring thoughtful consideration; and the penalty phase, if any, would be left to the judge. These acknowledgements, in writing, demonstrate a knowing and intelligent waiver of appellant's right to a jury trial. And the district court's canvass, while brief, further supports the conclusion that the waiver was knowingly and voluntarily made. At the time of the waiver, the district court had presided over appellant's case for nearly five years, with some discourse

between the bench and appellant at times; and appellant had been most-recently declared competent to proceed approximately one year before the waiver. Additionally, it appears from the record that appellant understood the judge would be deciding her fate. Based on the foregoing, we conclude the record demonstrates that appellant was made aware of her right to a trial by jury and that she knowingly, voluntarily, and intelligently waived that right.

Appellant relies upon nonbinding federal caselaw to argue a more in-depth canvas was required given her mental status. However, the Supreme Court of the United States and this court have only required that the defendant voluntarily and intelligently consent to the waiver. *See Adams v. United States*, 317 U.S. 269, 275 (1942); *Gallimort*, 116 Nev. at 318, 997 P.2d at 798. In describing a defendant's knowing and intelligent choice to waive the right to counsel, the Supreme Court has stated that the defendant "should be made aware of the dangers and disadvantages . . . so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta v. California*, 422 U.S. 806, 835 (1975) (internal quotation marks omitted). And here, appellant acknowledged in her written declaration that she had been made aware of the benefits and consequences related to a bench trial and that she wanted to proceed with the waiver. There is nothing in the record to suggest that any purported mental illness kept appellant from comprehending the risks associated with her waiver. And we decline appellant's request to impose a sua sponte duty

 

on district courts to conduct a more in-depth canvass of defendants with alleged mental health issues.[2]

*Merger*

Appellant contends her conviction, as a matter of law, may not be supported by an act of child abuse when the act of child abuse was murder. She claims that her act of child abuse merges with the act of killing such that child abuse cannot provide the predicate felony for application of the felony-murder rule. Her argument for merger falls into two categories: (1) child abuse is an assaultive-type crime that merges with the homicide and thus cannot be the basis for the felony-murder rule; and (2) the act of child abuse must be a separate act from the killing to be the basis for the felony-murder rule.

"The original purpose of the felony-murder rule was to deter felons from killing negligently or accidentally by holding them strictly responsible for the killings that are the result of a felony or an attempted one." *Payne v. State*, 81 Nev. 503, 506, 406 P.2d 922, 924 (1965). "The felony-murder rule makes a killing committed in the course of certain felonies murder, without requiring the State to present additional evidence as to the defendant's mental state." *Rose v. State*, 127 Nev. 494, 500, 255 P.3d 291, 295 (2011). The Legislature has specified certain, enumerated

---

[2]To the extent appellant argues that the test for competency to stand trial is different than the test for a knowing, voluntary, and intelligent waiver, Justice Scalia noted that "[i]t was never the rule at common law that a defendant could be competent to stand trial and yet incompetent to either exercise or give up some of the rights provided for his defense," *Indiana v. Edwards*, 554 U.S. 164, 184 (2008) (Scalia, J., dissenting) (internal quotation marks omitted), and that the Court had previously "rejected the invitation to craft a higher competency standard for waiving counsel than for standing trial," *id.*

felonies that constitute first-degree murder, including child abuse. *See* NRS 200.030(1)(b). "The felonious intent involved in the underlying felony is deemed, by law, to supply the malicious intent necessary to characterize the killing as a murder, and . . . no proof of the traditional factors of willfulness, premeditation, or deliberation is required for a first-degree murder conviction." *State v. Contreras*, 118 Nev. 332, 334, 46 P.3d 661, 662 (2002).

Beginning with appellant's contention that child abuse is an assaultive-type crime that merges with the killing, she relies on the dissenting language from *Contreras*, whereas the majority rejected the application of the merger doctrine.[3] *See id.* at 337, 46 P.3d at 664. This court has recognized that "[o]ne of the primary reasons we declined to follow California's example [in *Contreras*] was our recognition that the Legislature has specified the felonies that can be used for purposes of establishing first-degree felony murder." *Rose*, 127 Nev. at 502, 255 P.3d at 297.[4] To the extent appellant relies on this court's logic in *Collman v. State*, 116 Nev. 687, 714, 7 P.3d 426, 443 (2000)—that "child abuse can be and often is a rash, impulsive crime"—she does not explain how the consideration of child abuse as an impulsive crime alters the conclusion that a killing committed in the (attempted) perpetration of an enumerated felony constitutes first-

---

[3]The *Contreras* court discussed a California case, *People v. Wilson*, 462 P.2d 22 (Cal. 1969), which has since been overruled on the very ground appellant argues. *See People v. Farley*, 210 P.3d 361, 407-08 (Cal. 2009).

[4]This court went on to explain that there are no enumerated felonies for second-degree felony murder and adopted the merger doctrine for assaultive-type felonies forming the basis for second-degree felony murder only. *Rose*, 127 Nev. at 503, 255 P.3d at 297. We were clear in *Rose* that the merger doctrine would apply to second-degree felony murder, not first-degree felony murder. *Id.*

degree felony murder. And since *Collman* was decided, the Legislature has moved child abuse from NRS 200.030(1)(a), premeditated murder, to NRS 200.030(1)(b), felony murder, indicating its intent to hold a parent strictly responsible for a child's death occurring as a result of child abuse, despite the possibility that child abuse may sometimes be a result of impulsivity. *See* 1999 Nev. Stat., ch. 319, § 3, at 1335. As this court has not adopted the use of the merger doctrine for first-degree felony murder and as appellant has not presented any compelling reason for this court to diverge from the above logic and conclusions, we reject this argument by appellant.

As to appellant's argument that the act of child abuse must be a separate act from the killing, she claims the State's burden of proof is lowered by allowing the same act to constitute the underlying felony and the killing, thus resulting in a constitutional violation. She also contends that the wording of the statute suggests the underlying felony must be a separate, distinct act from the killing when it states that felony murder is murder "[c]omitted in the perpetration or attempted perpetration of" another crime, here child abuse. NRS 200.030(1)(b). If the same act can constitute both the underlying felony and the homicide, appellant alleges that a parent is automatically liable for first-degree murder if the parent's child is killed by abuse. Lastly, she claims that the fact an enumerated felony was committed does not mean the felony-murder rule automatically applies, pointing to this court's decision in *Nay v. State*, 123 Nev. 326, 167 P.3d 430 (2007) (holding that an afterthought felony, committed subsequent to a murder, could not support a felony-murder conviction).

Appellant acknowledges that the State does not have to prove premeditation or deliberation, and that malice is implied, if the State proves the killing occurred during the commission of an enumerated felony. *See*

*Contreras*, 118 Nev. at 334, 46 P.3d at 662. And as noted above, the felony-murder rule holds a party strictly responsible for a killing, whether done negligently or accidentally, that is the result of a felony. *Payne v. State*, 81 Nev. 503, 506, 406 P.2d 922, 924 (1965). As applied to child-abuse felony murder, if the child abuse was willfully committed and constituted physical injury of a nonaccidental nature, a parent is liable for first-degree felony murder should the abuse result in the child's death. Appellant's arguments appear to be with the very core of the felony-murder rule, but she does not present any authority that the felony-murder rule is unconstitutional or should be abolished. With regard to appellant's reliance on *Nay*, this court reasoned that an afterthought felony, committed subsequent to a murder, could not support a felony-murder conviction because the murder did not occur during a time when the defendant intended to commit the underlying felony. 123 Nev. at 332, 167 P.3d at 434. This is inapplicable to the instant matter, where the child abuse resulted in the homicide. Concerning appellant's assertion that the felony must be separate and distinct from the murder, "[w]hen the homicide is within the res gestae of the initial crime, and is an emanation thereof, it is committed in the perpetration of that crime in the statutory sense." *State v. Fouquette*, 67 Nev. 505, 528-29, 221 P.2d 404, 416-17 (1950). While appellant insists that the act of killing and the act of child abuse were the same, the State presented evidence that the child abuse was the stabbing of the victim and that the child abuse resulted in the victim's death.[5]

---

[5]Additionally, appellant's argument that the act constituting the predicate felony and the act of murder must be separate and distinct, also known as the "same-act doctrine," can be viewed as an argument for "an

SUPREME COURT
OF
NEVADA

(O) 1947A

Lastly, appellant argues that instruction number 10 was improper because a similar instruction was rejected in *Collman* and because it conflicts with instruction number 11 and NRS 200.508, the child abuse statute. However, as noted above, *Collman* dealt with a version of the murder statute before child abuse was added to the list of enumerated felonies constituting first-degree felony murder. 116 Nev. at 719-20, 7 P.3d at 446-47; *see also* 1999 Nev. Stat., ch. 319, § 3, at 1335. Therefore, appellant's argument that *Collman* found it was error to instruct the jury that a finding of child abuse was conclusive evidence of malice is misplaced, as a finding of child abuse now constitutes a finding of implied malice pursuant to the felony-murder rule. Appellant also claims that the instruction stated the child abuse had to be nonaccidental but that the murder could be accidental; and here, the child abuse and murder were the same acts, thus allowing for a conviction based on accidental murder. But this court has approved of a near-verbatim instruction in *Coleman v. State*, 130 Nev. 229, 244, 321 P.3d 901, 911 (2014), finding the instruction to "comply with our statutory scheme concerning first-degree murder and child abuse." Indeed, we acknowledged in *Coleman* that the child abuse must be nonaccidental even though the death could have been accidental or unintentional. *Id.* Accordingly, we reject this claim by appellant.

---

expansion of the merger doctrine." *See People v. Davis*, 821 N.E.2d 1154, 1168-71 (Ill. 2004) (Garman, J., concurring) (describing the differences between the merger doctrine, the same-act doctrine, and the collateral-felony doctrine, and identifying the same-act doctrine as a limitation on the felony-murder rule "whenever the act that constitutes the predicate felony is the same act that results in the death of the victim"). As this court has rejected the application of the merger doctrine in the context of first-degree felony murder, an argument for its expansion necessarily fails.

Having considered appellant's claims and concluded no relief is warranted, we

ORDER the judgment of conviction AFFIRMED.

                                       _____, J.
Hardesty

                                       _____, J.
Stiglich

                                       _____, J.
Silver

cc:    Chief Judge, Eighth Judicial District Court
       Eighth Judicial District Court, Department 6
       Clark County Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk